Ellen FINLAY;  Giessel, Barker &
Lyman, Inc.;  and Kenneth
Stalling, Appellants,

v.

Jenny E. OLIVE, Appellee.

No. 01–98–01388–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 31, 2002.

John S. Wallace, Giessel, Barker & Lyman, Inc., Houston, for Appellant.

Jeffrey B. McClure, Mayor, Day, Caldwell & Keeton, Houston, for Appellee.

Richard L. Flowers, McEviley & Flowers, Houston, for Appellee.

Panel consists of Justices MIRABAL, JENNINGS, and DUGGAN.*

## OPINION

LEE DUGGAN, Jr. Justice (Retired).

Attorney Ellen Finlay, her client, Kenneth Stalling, and her law firm, Giessel, Barker & Lyman, Inc., appellants, appeal

the trial court's judgment levying sanctions against them and shifting costs.

## Background

In August 1996, Jenny Olive filed suit against Kelsey–Seybold Medical Group P.A. d/b/a Kelsey–Seybold Clinic, Caremark, Inc. d/b/a Kelsey–Seybold Clinic and Kenneth Stalling (collectively "defendants").[1] Jenny Olive was represented by Richard Flowers with McEvily & Flowers. Kenneth Stalling was represented by Ellen Finlay with Thompson & Knight when suit was filed and during most of discovery, and later with Giessel, Barker & Lyman, Inc.[2]

Disagreements among counsel erupted as soon as discovery began. The parties filed motions to compel, motions to quash, and objections to discovery requests; the court's docket sheet reflects that the parties called the trial judge more than once to resolve disputes that arose during depositions. Prior to trial, plaintiff filed motions for sanctions for conduct related to (1) defendants' alleged refusal to produce Stalling for deposition, (2) Finlay's alleged threats to sue the witness during the deposition of a plaintiff's expert, Dr. Davis, (3) defendants' filing of a motion to exclude an audio tape, and (4) Stalling's filing of a temporary injunction action in another district court after the trial court ruled the audio tape was not the product of an illegal wiretap. The first three of these motions were filed pursuant to Rule 215 of the Texas Rules of Civil Procedure and Section 10 of the Texas Civil Practices &

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Olive sued defendants for negligent treatment and other claims arising out of an alleged sexual relationship she had with Stalling, her therapist. TEX. CIV. PRAC. & REM.CODE Ann. § 81.002 (Vernon 997).

2. Finlay was affiliated with Thompson & Knight when the lawsuit commenced but became affiliated with Giessel, Barker & Lyman, Inc. shortly before the trial in 1998. The Kelsey–Seybold entities were represented at trial by Jeffrey McClure with Mayor, Day, Caldwell & Keeton, L.L.P. Neither the Kelsey–Seybold entities, nor their trial counsel, are parties to this appeal.

Remedies Code; the fourth was filed pursuant to Rule 13 of the Texas Rules of Civil Procedure.

The trial court held a series of pretrial hearings on April 8, 1998, May 27, 1998, and June 1, 1998, but expressly declined to hear plaintiff's motions for sanctions at each of those hearings and instructed counsel to complete discovery and come back if sanctions were still necessary. The trial court did not rule on any motion for sanctions prior to trial.

### The trial

Trial took place July 22 through August 14, 1998. On August 3, 1998, the trial court found attorney Finlay in criminal contempt of court for asking questions during cross-examination that the court found improper and designed to embarrass the witness. On August 6, 1998, outside of the presence of the jury, the trial court heard testimony from Flowers regarding evidence he proposed to present to the jury about reasonable attorney's fees of $34,297 his client would be entitled to recover as a patient or a former patient, if she prevailed in her suit against the defendant mental health providers. *See* Tex. Civ. Prac. & Rem.Code Ann. § 81.004(b) (Vernon 1997). The attorney's fees in question were largely the attorney's fees plaintiff incurred as a result of the pretrial conduct complained of in her four prior motions for sanctions. The court did not hear testimony from defendants on August 6, 1998. On August 14, 1998, the jury returned a verdict favorable to the defendants.

---

**3.** Although Olive alleged this to be a Chapter 13 violation, the trial court recited in the Order it was a Chapter 10 violation.

**4.** Olive has not appealed the take-nothing judgment rendered on her claims.

### The September 8, 1998 Sanctions Order and Final Judgment

On September 8, 1998, the trial court signed a Sanctions Order, Final Judgment, and Order Adjudicating Contempt and Punishment. The September 8, 1998 Sanctions Order awards Olive $34,297 against Finlay, Stalling, and Giessel, Barker & Lyman, Inc. as sanctions for violations of Texas Rule of Civil Procedure 215 and Chapter 10 of the Texas Civil Practices and Remedies Code. The Sanctions Order recites that the trial court, *during* trial, heard evidence concerning discovery abuse that occurred *prior to* trial, including evidence of (1) the threatening of a witness with legal action related to an audio tape that was ultimately admitted into evidence, (2) dilatory tactics employed by defendants requiring four motions to compel the deposition of Stalling, and (3) the filing of a separate lawsuit to circumvent rulings of the trial court concerning the audio tape.[3]

The September 8, 1998 Final Judgment orders that Olive take nothing on her claims,[4] that Olive recover "discovery" sanctions in the amount of $34,297 against Stalling, Finlay, and Giessel, Barker & Lyman, Inc., and that Olive recover her costs from defendant Stalling.

The September 8, 1998 Final Order Adjudicating Contempt and Punishment finds Finlay guilty of criminal contempt and assesses a fine of $500.[5]

### Olive's Post-judgment motion for sanctions and the sanctions order for attorney's fees

Defendant Stalling, Finlay, and Giessel, Barker and Lyman, Inc. filed post-judg-

---

**5.** The contempt order is not at issue in this appeal.

ment motions seeking to reform the final judgment and sanctions order. Plaintiff filed a post-judgment motion for sanctions related to Finlay's filing of a purported post-judgment Rule 11 Agreement that plaintiff's counsel denied was legitimate. After a November 24, 1998 hearing, the trial court on December 22, 1998, entered its Order that denied defendants' motions, granted plaintiff's motion to strike the Rule 11 Agreement and for sanctions, and ordered Stalling, Finlay, and Giessel, Barker & Lyman, Inc., jointly and severally, to pay $450 attorney's fees to plaintiff's counsel, McEvily & Flowers. The trial court's September 8, 1998 Final Judgment, the September 8, 1998 Sanctions Order, and the December 22, 1998 Order granting post-judgment sanctions are the subject of this appeal.

## Issues Presented

In four issues on appeal, appellants assert the trial court erred: (1) in awarding sanctions against them post-trial for alleged pre-trial discovery abuse and post-judgment conduct; (2) in ordering sanctions against Stalling, the defendant/client in particular, an innocent party; (3) in ordering sanctions against trial attorney Finlay's law firm, Giessel, Barker, and Lyman, Inc., in particular; and (4) in shifting Olive's costs of court to the prevailing party, Stalling.

## Standard of Review

■ We review a trial court's sanctions award for abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). The test is whether the court acted without reference to any guiding rules and principles, i.e., whether the act was arbitrary and unreasonable. *Id.* at 242.

## Analysis

### Sanctions for pre-trial conduct

■ The September 8, 1998 Sanctions Order, which was incorporated into the Final Judgment, was expressly based on the trial court's finding that appellants violated Chapter 10 of the Texas Civil Practices and Remedies Code and Texas Rule of Civil Procedure 215. When an order of sanctions refers to one specific rule, either by citing the rule, tracking its language, or both, we are confined to determining whether the sanctions are appropriate under that particular rule. *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

Chapter 10 of the Civil Practices and Remedies Code provides two ways to initiate sanctions proceedings concerning frivolous pleadings and motions: (1) a party-initiated motion, as authorized by section 10.002(a), describing specific conduct in violation of section 10.001, or (2) a court-initiated motion with a show cause order from the court, as authorized by section 10.002(b). Here, the trial court never issued a show cause order. On May 13, 1998, plaintiff filed a pretrial motion for sanctions complaining about a separate lawsuit filed by defendants in an attempt to negate the trial court's pretrial ruling on evidence admissibility. Section 10.003 requires that "[t]he court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations." No notice of hearing was given to defendants, and no hearing under Section 10.003 was conducted. Further, no ruling was made on the motion for sanctions before trial started.[6]

---

**6.** Even if monetary sanctions could be levied against attorney Finlay and the law firm for

the filing of the separate lawsuit "to circumvent rulings by this court," as the Sanctions

Plaintiffs also alleged that defendants violated Texas Rule of Civil Procedure 215, which prohibits abuse of the discovery process. Sanctions for discovery abuse under Rule 215 may be imposed only after notice and hearing. TEX.R. CIV. P. 215.3; *See Jefa Co. v. Mustang Tractor and Equip. Co.*, 868 S.W.2d 905, 909 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (due process requires that a party be given an adequate opportunity to be heard). As noted above, the court declined to hear plaintiff's sanctions motions prior to trial. The only hearings that appellee/intervenor points to as "sanctions hearings" occurred during trial on August 6, 1998, and post-trial on September 8, 1998 and November 24, 1998.

The transcripts of those hearings make clear that none constituted a sanctions hearing. On September 8, 1998, the trial judge stated "[t]his is the final judgment. This isn't a hearing." The November 24, 1998 hearing occurred well after entry of the Sanctions Order and Final Judgment and clearly did not constitute a sanctions hearing. That leaves only the trial proceedings of August 6, 1998 as possibly including a sanctions hearing. On that day, the trial court heard testimony as to plaintiff's attorney's fees, but did not hear testimony or argument regarding the underlying facts plaintiff was relying upon to justify sanctions. The docket sheet notes only that evidence was heard on that date relating to attorney's fees; it does not mention a hearing on sanctions. Moreover, the record does not contain any notice that sanctions would be heard on August 6, 1998. Because there was no sanctions hearing, the trial court abused its discretion in imposing sanctions against appellants.

■■■■ The result would be the same even if the August 6, 1998 proceeding was intended as a sanctions hearing.[7] Sanctions for alleged violations known to movants before trial are waived if a hearing and ruling are not secured pretrial. *See Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993) (failure to obtain pretrial ruling on discovery disputes existing before commencement of trial constitutes waiver of any claim for sanctions based on that conduct).

In *Remington Arms*, of 12 incidents of misconduct cited in the sanctions order, nine concerned pretrial conduct of which the movant was aware before trial. *Id.* In the instant case, all of the conduct noted in the September 8, 1998 Sanctions Order occurred, and was known to plaintiff, pretrial. It is true that plaintiff filed her motions for sanctions prior to trial, but there was no pretrial hearing or pretrial ruling on any sanctions motion in a situation where the relevant evidence was shown only *during trial.*

This Court has ruled that it is not an abuse of discretion for a judge to postpone ruling on a sanctions motion until after trial. *Gaspard v. Beadle*, 36 S.W.3d 229, 240 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (trial judge may postpone ruling on motion until after relevant trial evidence is heard). *Gaspard* simply provides an example of *Remington Arms'* exception for abuse "revealed for the first time during . . . trial." *Remington Arms*, 850 S.W.2d at 170. *Gaspard* involved a

---

Order recited, Section 10.004(d) prohibits the award of monetary sanctions against Stalling, "a represented party," for such pleading.

7. The trial judge apparently considered, at least in retrospect, August 6, 1998, to be a sanctions hearing. The Sanctions Order

states that the trial court heard evidence on sanctions "during the trial of the cause," and at the September 8, 1998 proceeding the trial judge said "I'm just announcing my ruling from a hearing held during the trial. . . ."

sanctions motion filed under Rule 13 alleging a plaintiff's petition to be groundless and in bad faith. 36 S.W.3d at 240. Gaspard sued his former girlfriend for libel and slander. *Id.* Only during trial did Gaspard admit under oath that he had no evidence of any damage to his reputation when he filed his defamation claim. *Id.* The trial court had carried the defendant's pre-trial motion for sanctions until it could hear the relevant trial testimony—the essence of Gaspard's cause of action—and consider whether the pleading itself was frivolous. *Id.* By contrast, in the case before us, the pre-trial conduct matters at issue in Olive's sanctions motions were all complete before trial; no trial testimony was needed to determine whether improper conduct known before trial warranted sanctions. By requiring a pretrial ruling on existing pretrial disputes, the parties are better able to organize and present their cases without surprise. To postpone rulings on completed pre-trial matters, where trial pleadings in the case are not at issue, and where trial testimony has no bearing on the sanctions dispute, would be to violate the very essence of *Remington Arms.*

We hold that Olive waived her right to Chapter 10 and Rule 215 sanctions by failing to request and obtain a pretrial hearing on her sanctions motions for matters that were known to her after her depositions were completed, but before trial. For the reasons discussed above, we sustain appellants' first issue to the extent it relates to sanctions of $34,297 against Stalling, Finlay, and Giessel, Barker & Lyman, Inc. for pretrial discovery abuse.

### Post-judgment sanctions against Stalling, Finlay, and Giessel, Barker & Lyman, Inc.

We next consider the December 22, 1998 order assessing a sanction of $450 against appellants in favor of Olive's counsel for post-judgment conduct.

While still Olive's attorney of record, Flowers filed a motion to strike and request for sanctions against appellants because of an instrument Finlay filed on or about September 14, 1998, after entry of the Final Judgment and Sanctions Order on September 8, 1998. Olive's motion alleged that Finlay filed what she represented to be a Rule 11 agreement among counsel; that the instrument filed was merely her counter-proposal of an agreement; that her signing of it was an intentional misrepresentation; and that its filing was groundless, done in bad faith, and needlessly increased the cost of litigation.

Following a hearing on November 24, 1998, the trial court found the allegations of the sanctions motion true, struck Finlay's purported Rule 11 "agreement", and levied a monetary sanction of $450 attorney's fee against Stalling, Finlay, and Giessel, Barker & Lyman, Inc., to be paid directly to McEvily & Flowers as reasonable and necessary attorney's fees for the preparation and presentation of Olive's motion to strike and for sanctions.

### Post-judgment sanctions against Stalling, the defendant/client

A client should not be sanctioned for his attorney's conduct unless the client is implicated apart from having entrusted legal representation to counsel. *Metzger v. Sebek*, 892 S.W.2d 20, 52–53 (Tex.App.-Houston [1st Dist.] 1994, writ denied). A "just" sanction must be leveled against the actual offender, not an innocent party. *Id.* Nothing in the record indicates that Stalling directed his attorney, Finlay, to file the purported post-judgment Rule 11 agreement. The trial court therefore erred in awarding the post-judgment sanction of $450 against Stalling. Appellant's first issue is sustained as to appellant Kenneth Stalling, and the Order assessing a sanc-

tion of $450 against him is reversed and rendered.

■ Finlay argues that the filing of a Rule 11 Agreement, which was later found to be unenforceable, cannot be grounds for sanctions, relying on *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Finlay's reliance on *Laub* is misplaced. In *Laub,* this Court recognized that an argument that is unsuccessful is not necessarily groundless. *Id.* Here, the trial court found not only that Finlay's letter was unenforceable, but also that it was filed in bad faith and caused needless increase in the cost of litigation. Although by November 24, 1998, McEvily & Flowers no longer represented Olive, they represented her at the time the purported Rule 11 Agreement was filed and when the motion to strike and for sanctions was prepared and filed. Although there was no testimony regarding the number of hours plaintiff's counsel spent in preparation and presentation of the motion for sanctions, the trial court had previously heard testimony that Flowers' rate was $250 per hour. The trial court also had Finlay's letter and the motion Flowers prepared before it. There was sufficient evidence to support the $450 sanction against Finlay. *See Jefa Co.,* 868 S.W.2d at 910 (court is entitled to consider entire history of case in making a decision on sanctions).

■ Giessel, Barker & Lyman, Inc. also argue that the trial court abused its discretion in assessing sanctions against them because (1) Finlay was employed "of counsel" with the firm when the document was filed, (2) she was not acting as a vice principal for the firm or with its authorization, and (3) the firm did not ratify her actions. The firm contends that the rules under which Finlay was sanctioned contemplate sanctions only against an attorney or the attorney's client, but not the attorney's law firm.

■ Appellants have not cited any case specifically holding that Chapter 9, Chapter 10, or Rule 215 sanctions may not be awarded against a law firm in addition to the attorney/employee who signs a pleading, when that law firm's name is on the pleading or filing. Here, Finlay testified at the November 24, 1998 hearing that she filed the purported Rule 11 agreement under the specific law firm title of Giessel, Barker, & Lyman, Inc. We conclude that a law firm may be sanctioned for groundless pleadings filed on its behalf by an attorney employed with the firm.[8]

■ Finally, appellants argue that the trial court abused its discretion in awarding the $450 to intervenor /appellee McEvily & Flowers when they no longer represented Olive.

Although McEvily & Flowers no longer represented Olive by November 24, 1998, they represented her at the time the purported Rule 11 Agreement was filed, and when the motion to strike and for sanctions was prepared and filed. Furthermore, McEvily & Flowers had filed a motion to intervene in its own right before the December 22, 1998 sanction was awarded, although the trial court does not reflect a ruling on this motion.

---

**8.** Numerous other Texas decisions have involved sanctions in which law firms were sanctioned as an entity for acts committed by employees. *See, e.g., Kiefer v. Continental Airlines, Inc.,* 10 S.W.3d 34, 41 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (affirming a sanction against a law firm for introducing certain witnesses at a hearing on a motion for new trial); *Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d 105, 109 (Tex.App.-Dallas 1992, orig. proceeding) (determining that a law firm was not entitled to mandamus relief for $25,000 sanction imposed on it for violation Texas Rules of Procedure 13 and 215).

We conclude the trial court did not abuse its discretion in assessing the $450 sanction against both appellants Finlay and Gissel, Barker & Lyman. We sustain appellants' first issue, except for the December 22, 1998 Order's imposition of $450 in sanctions against Finlay and Giessel, Barker & Lyman, Inc.

Because appellant's first issue disposes of all matters concerning pre-trial and post-judgment sanctions, we need not address appellants' second and third issues, which separately urge additional reasons why the levy of pre-trial sanctions against Stalling and Giessel, Barker and Lyman, Inc., was improper.

**The assessment of costs against Stalling, the prevailing party**

██ Appellant's fourth issue asserts the trial court erred in shifting responsibility for Olive's costs to Stalling.

██ There is no dispute that Stalling was a prevailing party at trial. The Final Judgment holds that Olive shall take nothing from defendants, including Stalling, as the result of her claims. Texas Rule of Civil Procedure 131 sets forth the general rule that the prevailing party shall recover costs; Texas Rule of Civil Procedure 141 provides an exception to the general rule for good cause stated on the record. There is no statement of good cause contained either in the final judgment or in the transcript of the September 8, 1998 proceeding for entry of the final judgment. This Court requires that the Rule 141 statement of good cause appear on the face of the record; we do not presume that the trial court made the necessary finding in this situation. *See Marshall Investigation & Sec. Agency v. Whitaker*, 962 S.W.2d 62, 63 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

██ Intervenor McEvily & Flowers does not direct us to any finding on the record regarding good cause to vary from Rule 131. We have scrutinized the transcript from the September 8, 1998 entry of judgment proceeding and the Final Judgment itself, and it is clear that the trial court did not make such a finding. In fact, the allocation of costs was not addressed at all. *See Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex.1985) (appellate court should scrutinize record to determine if it supports trial judge's decision to tax costs to prevailing party). Failure to state on the record a finding of good cause to vary from Rule 131 constitutes an abuse of discretion. *See State v. B & L Landfill, Inc.*, 758 S.W.2d 297, 300 (Tex.App.-Houston [1st Dist.] 1988, no writ).

We sustain appellants' fourth issue and reverse the trial court's judgment that Olive recover her costs from Stalling. We reform the judgment as to costs because the record does not reflect any stated reason for assessing costs against the successful party, as required by Rules 131 and 141. *Neal v. Ardoin*, 594 S.W.2d 145, 147 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ) (reforming judgment as to costs because record does not reflect any stated reason for assessing costs against successful party).

**Conclusion**

The Final Judgment is reversed as to Olive's recovery of $34,297 from Stalling, Finlay, and Giessel, Barker & Lyman, Inc. and judgment is rendered that Olive take nothing as sanctions for pre-trial discovery conduct. The Final Judgment is further reversed as to the award of post-judgment sanctions against Stalling, and is reformed to award $450 in attorney's fees to be paid by Finlay and Giessel, Barker & Lyman, Inc., jointly and severally, to McEvily and

Flowers. The Final Judgment is further reversed as to Olive's recovery of costs from Stalling, and is reformed to award recovery of costs to Stalling, the prevailing party. In all other respects, the judgment remains intact.