# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00182-CV

**Edward Sanchez, Appellant**

**v.**

**David B. Fiedler and Xuan S. Zhang a/k/a Sharon Zhang, Appellees**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
### NO. 11-0784, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Edward Sanchez appeals from the sanctions order entered against him after he nonsuited his defamation claims against David B. Fiedler and Xuan S. Zhang a/k/a Sharon Zhang. Sanchez contends that: (1) appellees waived their right to sanctions by not seeking them before the nonsuit; (2) his pleadings were not sanctionable, and the court did not use a proper analysis or make proper findings to support a sanctions award; (3) the sanctions award is excessive; and (4) the sanctions award fails to allocate the amount of sanctions attributable to discrete sanctionable actions. We will affirm the order.

### BACKGROUND[1]

Sanchez sued appellees Fiedler and Zhang for defamation arising from comments they allegedly made to another coworker. All three parties work together as engineers at a company

---

[1] The background is summarized from evidence in the record of this appeal.

in Seguin, Texas. The original claim arose from an April 11, 2010 e-mail Zhang sent to another female coworker, Rilla Cox, in response to Cox asking for an opinion about Sanchez, whom Cox had been dating for a few weeks.

In her e-mailed response, Zhang stated that although she had not discussed what she had heard about Sanchez with anyone because she did not like to spread rumors, she decided to tell Cox out of concern for her and allow Cox to make her own decision. Zhang stated that she had heard that Sanchez was a "control freak" with his ex-wife. Zhang also stated that she had heard examples of his controlling nature from Fiedler, who had learned them from his wife who, in turn, had learned them from Sanchez's then-wife. Zhang said that Sanchez blamed Fiedler for breaking up his marriage and sent a letter threatening to kill Fiedler. Zhang said that Sanchez's then-wife obtained an order requiring Sanchez to keep his distance from their house and children, but that Sanchez went inside the house one day while everyone was away and knocked some holes in the wall. Zhang said that Sanchez's children were traumatized by his controlling nature, did not want to stay with him during their visitation time, and called 911 on him during one visit. Zhang closed her e-mail by stating that she hoped that the stories she had heard were not true, but she did not want Cox to end up in the same situation if they were, and she hoped everything worked out for Cox.

Six months later, Cox decided to pass along Zhang's e-mail to Sanchez. The following month, Sanchez himself forwarded the e-mail to their human resources department at work. Sanchez subsequently sued Zhang and Fiedler.

Sanchez initially sued Zhang for defamation and libel per se and Fiedler for defamation, slander per se, and gross negligence. By his third amended original petition, Sanchez added allegations regarding additional statements Fiedler made in court filings and discovery

2

responses. Sanchez tied his libel per se claims against Zhang to the statements in her e-mail to Cox about him threatening to kill Fiedler, sneaking into his family's home despite a restraining order, and taking several actions to exercise control over his family. Sanchez tied one slander per se claim against Fiedler to the statements that Zhang attributed to him in her e-mail. Sanchez's second slander per se claim against Fiedler arose from Fiedler's discovery response in which he stated that he had warned Sanchez's supervisor and human resources manager that Sanchez posed a risk of "going postal." Sanchez claimed gross negligence, alleging that Fiedler knew the risks of sharing these stories with supervisors and a coworker but did so anyway. Sanchez also alleged that Fiedler had a history of making defamatory statements about coworkers.

Fiedler and Zhang moved for summary judgment and for sanctions. On November 13, 2013, Sanchez filed a 2200-plus-page response to the motion for summary judgment and his third amended original petition. Nine days later, Sanchez nonsuited his claims. On the same day, while their summary-judgment motion was still under advisement, appellees filed an amended motion for sanctions. On November 25, 2013, the trial court informed the parties that it was granting the appellees' motion for summary judgment.[2] Thereafter, the trial court signed an order granting sanctions against Sanchez and awarding $20,570.48 as reasonable attorney's fees and expenses to Fiedler and Zhang.

The trial court listed several bases for its sanctions award made under Texas Civil Practice and Remedies Code section 10.001. It addressed Sanchez's three amended petitions, his numerous motions—including his motion to quash discovery and for a protective order, his motion

---

[2] The court later withdrew this order in light of Sanchez's nonsuit.

3

to reconsider the motion to quash, his motions for no-evidence summary judgment, and his motion for sanctions—as well as his persistence with the lawsuit that compelled defendants to file their own motion for summary judgment, after which Sanchez promptly filed his nonsuit. The trial court found that Sanchez's petitions had claims that were not warranted by existing law and had allegations or contentions that were not supported by and not likely to be supported by evidence. The court stated that the lawsuit was based on a communication that was private and made at the request of Cox, not the defendants. The court also noted that Cox then provided the communication to Sanchez, who himself published it to his employer.

The court opined that Sanchez's intent in filing the pleadings was evident from his discovery responses in the court's files, including personal, harassing assaults on the character of Fiedler and Fiedler's wife. The court wrote, "Plaintiff's continued litigation of these claims despite being on notice of all of Defendants' defenses and the encouragement of the Court to secure competent legal counsel is part of the basis for these sanctions. These pleadings caused inconvenience, harassment and out-of pocket expense, including attorney's fees for Defendants. Plaintiff's actions caused the limited resources of this Court to be wasted." The trial court stated variations of these conclusions with respect to the other pleadings.[3] The court further found that

[3] The trial court assessed sanctions after concluding that Sanchez's conduct and his pleadings were intended to publicly harass the defendants rather than resolve a dispute. Specifically, the court concluded that: (1) Sanchez's motion to quash and for a protective order against discovery were unfounded because they were filed to protect against discovery of his employment, wage, and salary information that was discoverable because of the claims in his lawsuit; (2) Sanchez filed his first "no-evidence" motion for partial summary judgment (which was actually a hybrid motion including traditional summary-judgment grounds) before discovery was complete, making it premature under the rules, and the defendants were compelled by the timing of Sanchez's filing to seek a motion for continuance; (3) Sanchez's summary-judgment motion was filed for an improper purpose because his lawsuit was not well-founded, and he filed his second no-evidence motion for summary judgment

4

Sanchez used the trial court's resources to strike out personally against defendants without a sound legal basis.

## DISCUSSION

In this appeal, Sanchez contends that appellees waived their right to sanctions by not seeking them before Sanchez filed his nonsuit, that his pleadings were not sanctionable, that the court did not use a proper analysis or make proper findings to support a sanctions award, that the sanctions award is excessive, and that the sanctions award fails to allocate the amount of sanctions attributable to discrete sanctionable actions.

### No waiver of claim for sanctions

In his first issue, Sanchez contends that appellees waived their complaints about his conduct by waiting until after summary judgment and nonsuit to obtain a hearing. He relies on a case holding that a party who waited until after trial to seek sanctions waived her right to complain about pretrial conduct. *See Finlay v. Olive*, 77 S.W.3d 520, 525 (Tex. App.—Houston [1st Dist.] 2002, no pet.). That case relied on a supreme court holding that a party's failure to obtain a pretrial ruling on discovery disputes existing before trial waives any claim for sanctions based on that pretrial conduct. *See id.* (citing *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993)). The supreme court favored pretrial rulings on pretrial disputes to allow the parties to organize their

---

despite knowing the evidence the defendants had amassed; (4) Sanchez filed his motion for sanctions and for reconsideration of the denial of his motion to quash to avoid compliance with the court's prior orders; and (5) Sanchez filed a meritless lawsuit that compelled defendants to file a motion for summary judgment, which Sanchez attempted to avoid by filing his notice of nonsuit while the trial court had the motion for summary judgment under advisement.

trials better. *Id*. at 526. That policy concern is absent here because Sanchez nonsuited his claims before the summary judgment occurred, much less trial preparation or an actual trial. Further, given that a nonsuit can be filed unilaterally, the approach urged by Sanchez could enable a party subject to sanctions to avoid them by nonsuiting.

The supreme court has held that trial courts may grant a sanctions motion filed after a nonsuit so long as they do so within their plenary power. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596-97 (Tex. 1996). The signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires. *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997). The supreme court made that distinction expressly so that trial courts would retain the authority to impose sanctions when appropriate. *Id.* The trial court in this case signed the sanctions order before it signed the dismissal order and thus acted within its plenary power. We overrule Sanchez's first issue.

**No abuse of discretion in awarding sanctions on Sanchez's pleadings**

In his second issue, composed of several sub-issues, Sanchez contends that his pleadings were not sanctionable and that the trial court did not use a proper analysis or make proper findings to support a sanctions award.

We review a trial court's imposition of sanctions for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007); *Randolph v. Walker*, 29 S.W.3d 271, 276 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that trial court's ruling on motion for sanctions is considered "using the most deferential standard of review"). We will reverse only if the district court acted "without reference to any guiding rules and principles" such that its ruling was

6

arbitrary or unreasonable. *Low*, 221 S.W.3d at 614. In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Imposition of sanctions is appropriate (1) if there is a direct relationship between the improper conduct and the sanctions imposed—i.e., the sanctions must be directed against the abuse and abuser and be tailored to remedy any prejudice the abuse caused—and (2) if the sanctions are not excessive—i.e., the punishment should fit the crime. *Id.* In deciding whether the sanctions constitute an abuse of discretion, we examine the entire record. *Randolph*, 29 S.W.3d at 276.

Sanctions may be imposed for a violation of section 10.001 of the Texas Civil Practice and Remedies Code, which states:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1)     the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)     each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)     each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)     each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

7

Tex. Civ. Prac. & Rem. Code § 10.001, *see id*. § 10.004 (setting forth types of sanctions available for violation of section 10.001). Here, the first three subsections of the statute—i.e., presentation of signed pleadings for an improper purpose, inclusion of claims in pleadings that are not warranted by existing law, and assertion of allegations in pleadings without evidentiary support—were identified as bases for the trial court's sanctions order.

### 1. Defamation claims in pleadings and improper purpose

Sanchez contends that his pleadings were not sanctionable, and the trial court's sanctions order was an abuse of its discretion, because he had a factual and legal basis for his defamation claims. Sanchez further contends that because he had a factual and legal basis for those claims, his pleadings necessarily were not brought for an improper purpose.

Defamation requires proof of (1) publication of a false statement of fact to a third party that (2) was defamatory concerning the plaintiff and (3) was made with the requisite degree of fault and (4) caused damages, in some cases. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). As Sanchez's cited authorities provide, if a statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is defamatory per se. *See Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied); *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App.—Dallas 1986, no writ); *see also Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (false accusation of commission of criminal act is defamatory per se). Whether a statement is defamatory per se is generally a question of law. *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015).

The court's first step in determining whether a statement is defamatory per se is deciding whether the statement is reasonably capable of a defamatory meaning "from the perspective of an ordinary reader in light of the surrounding circumstances." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). If it is not, then it is not defamatory as a matter of law, and the claim fails. *Id.* Focus is on the challenged publication as a whole because "the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Lipsky*, 460 S.W.3d at 594.

Here, in each paragraph of the sanctions order discussing Sanchez's petitions and summary-judgment motions, the court stated that Zhang's e-mail—considered in its entirety—was not unambiguously defamatory: "It is clear from the face of the communication when read as a whole that it is not defamatory and since each claim made by Plaintiff in each of the amended petitions stems from this communication, all of his claims lack merit." The court's determination that the communication was not defamatory is supported by the gist of Zhang's e-mail, which was not a gratuitously volunteered accusation but rather a sharing of information provided out of concern for the well-being of a co-worker and friend, made at her request:

- Hi Rilla, Sorry it took so long to send the e-mail. . . . This is what I heard. It has been a couple of years so I don't remember all the details. I've not discussed this w/anyone cuz I don't know how true it is and don't like to spread rumors. For the same reason, I've never held this against him either professionally at work. But since you're seeing him, I'm concerned for you in case this is true so I want you to be aware of it and make your own judgment call based on the info I recall from my memory.

- I am sorry I have to tell you these things. I hope they're not true but I don't want you to end up in the same situation if they were. I hope everything works out for you, whatever it is.

9

The court also considered the record in this case, taking judicial notice of it at the hearing on the motion for sanctions. The record contains an opinion from the San Antonio Court of Appeals in Sanchez's divorce and child custody case that was published on July 7, 2007—well before Zhang sent the e-mail to Cox in 2010. *See Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 Tex. App. LEXIS 5166 (Tex. App.—San Antonio July 3, 2007, pet. denied) (mem. op.). The opinion states, "The trial court found Edward had engaged in a pattern of child neglect as well as physical and emotional abuse directed against Cynthia [his then-wife] and the children." *Id*. at *2. "In this case, though denied and/or its effects minimized by Edward, there was ample evidence of a history of family violence and credible evidence establishing a history or pattern of child neglect and physical abuse toward the children." *Id*. at *5. The opinion proceeds to identify that evidence of abuse and neglect in some detail. *Id*. at *5-7. Sanchez's pleadings acknowledge the existence of the appellate opinion in his case and contend that the opinion is "false,"[4] but Sanchez fails to explain how it could be read as inconsistent with statements in Zhang's subsequent e-mail communication when she sent it. In considering the propriety of chapter 10 sanctions, trial courts apply an objective standard to determine whether a party made a reasonable inquiry into the legal and factual bases of its claims at the time the pleading was filed. *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 311, 348 (Tex. App.—San Antonio 2006, pet. denied). Here, the court's sanctions order specified that at the time of his filings Sanchez was "fully aware of the facts surrounding the communication" and that he was "on notice of all Defendants' defenses."

---

[4] Contrary to Sanchez's view, the record does not reflect that the Texas Department of Family and Protective Services "ruled out" any allegations of neglect or abuse.

10

The court also considered the record in determining that Sanchez's pleadings were presented for an improper purpose. Texas cases have recognized that a trial court may rely on circumstantial evidence and may take judicial notice of its case file in determining that pleadings were filed with an improper motive. *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.); *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ). For example, when a plaintiff nonsuits only after a motion for summary judgment is filed, the timing of the nonsuit may support an inference that the plaintiff did so to escape summary judgment on the merits of his claims. *Epps v. Fowler*, 351 S.W.3d 862, 870-71 (Tex. 2011) (citing *Butler v. MBNA Tech., Inc.*, No. 3:02-CV-1715-H, 2004 U.S. Dist. LEXIS 3069, at *14-15 (N.D. Tex. Mar. 1, 2004) (noting that because plaintiff dismissed her claims to avoid summary judgment on merits, court then had to ask "whether her claims were frivolous, unreasonable, or without foundation")).

In its sanctions order here, the trial court states that Sanchez's subjective intent in filing his pleadings is evident from the record, which is "replete with personal, harassing assaults on the character of David B. Fiedler,"[5] and includes Sanchez's stated "desire to simply make his assaults 'public' even though there may be no legal basis for his claims." The court's latter reference is to correspondence sent from Sanchez to Fiedler's wife—before Sanchez filed the underlying suit—stating: "[I]f I am ever able to confirm from anyone at all that either David or you said anything, anywhere, anytime, in any which way against me that can even marginally be construed as defamatory, I will file a lawsuit against you and drag you into court. Even if only to make a point

---

[5] Sanchez's filings referred to Fiedler as, among other things, a "dick head," "asshole," "liar," "jackass[]," and an "unethical moron[]."

11

and a public matter of this." Additionally, the sanctions order reflects the court's inference that Sanchez's pleadings were brought for an improper purpose based on the timing of his nonsuit:

> The Court notes that since the filing of this Amended Motion [for sanctions] and during the pendency of Defendants' Motion for Summary Judgment, Plaintiff filed a Notice of the Nonsuit of his claims, at a time when Plaintiff knew the Court was considering the Defendants' Motion for Summary Judgment and Plaintiff was aware of the Court's rulings with regard to his Summary Judgment evidence. The Court finds this conduct and all of Plaintiff's pleadings and filings representative of Plaintiff's subjective intent to publicly harass Defendants, rather than to resolve a legitimate dispute[,] and evidence that Plaintiff's pleadings were filed needlessly and for improper purposes, including harassment. The Court finds that Plaintiff, Edward Sanchez used the Court's limited resources to strike out personally against Defendants without a sound, legal basis.

At the hearing on Sanchez's motion to modify the sanctions imposed, the court concluded, "[T]here is no doubt in my mind that this lawsuit, from its inception, was meritless, frivolous, and malicious."

In sum, as part of its sanctions inquiry, the trial court as factfinder was tasked with determining the meaning of Zhang's e-mail—including whether it was false and defamatory—based on a reasonable person's perception of the entirety of it. *See Lipsky*, 460 S.W.3d at 594. In considering the propriety of chapter 10 sanctions, the court was to apply an objective standard in determining whether Sanchez made a reasonable inquiry into the legal and factual bases of his claims when he filed his pleadings. *See Loeffler*, 211 S.W.3d at 348. And in considering whether Sanchez's pleadings were filed for an improper purpose, the court was allowed to take judicial notice of Sanchez's personal attacks and litigation threat documented in the case file, and draw a negative inference from the nonsuit that Sanchez filed only after appellees' filing of their motion for summary judgment. Based on the entirety of this record, we conclude that the court did not abuse its discretion in deciding that Zhang's e-mail read as a whole is not defamatory, that Sanchez's claims lacked

12

merit—i.e., were not warranted by existing law and lacked evidentiary support—based on what he knew when he filed his pleadings, and that Sanchez's pleadings were presented for an improper purpose. We overrule this subpart of Sanchez's second issue.

## 2. Motion to quash and for protective order and motion to reconsider

The trial court determined that Sanchez's motion to quash subpoena and for protective order, and his motion to reconsider the denial of his motion to quash, violated chapter 10 because they "were presented for an improper purpose and had a claim or legal contention that is not warranted by existing law." The court stated that "it was Plaintiff's own claim for defamation and damages that drove the discovery of his employment, wage, and salary information which he was trying to withhold from Defendants." The court also stated that "there was no need for the court to reconsider the motion to quash which the court denied in July 2012" and that "Plaintiff failed to sign the proposed Order and filed this pleading [for reconsideration] to avoid compliance with the Orders of the Court." The court further stated that these pleadings wasted the court's limited resources and caused "delay, inconvenience, harassment, and out of pocket expenses, including attorney's fees for Defendants."

The Texas Rules of Civil Procedure set forth the proper process for seeking protection from and objecting to written discovery. Rule 192.6(a) provides that "[a] person should not move for protection when an objection to written discovery or an assertion of privilege is appropriate." Tex. R. Civ. P. 192.6(a). Additionally, Rule 193.2(c) provides that "[a] party may object to written discovery only if a good faith factual and legal basis for the objection exists at the time the objection is made. Tex. R. Civ. P. 193.2(c)).

13

Sanchez contends, without citation to any authority, that the district court abused its discretion in awarding sanctions based on his motion to quash subpoena and for protective order and his motion to reconsider the motion to quash because such sanctions were barred by res judicata. Res judicata bars relitigation of claims that have been finally adjudicated, along with related matters that should have been litigated in a prior suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). Sanchez notes that the trial court had previously conducted a sanctions hearing on his motion to quash and for reconsideration and issued a $250 sanctions order that it later withdrew. However, as appellees correctly point out, res judicata does not apply here because "an interlocutory judgment or order cannot operate as res judicata." *Starnes v. Holloway*, 779 S.W.2d 86, 93 (Tex. App.—Dallas 1989, writ denied); *see Miller*, 52 S.W.3d at 696 (noting that res judicata applies to final adjudications).

Next, Sanchez contends that his motion to quash subpoena and for protective order and his motion to reconsider the motion to quash were not brought for an improper purpose and thus were not sanctionable under chapter 10 because he had a legitimate argument that the subpoena to his employer for "[a]ny and all Human Resources records concerning Edward Sanchez for the period from January 1 2004 to the present time [2012]" was irrelevant to his defamation per se claim that sought only general, nominal damages. At the hearing on his motion to quash, Sanchez told the trial court, "I haven't specifically pled any damages for loss of reputation. I haven't actually stated loss of reputation." But Sanchez's First Amended Petition, his live pleading at the time, proved otherwise. It plainly stated that his claims against appellees were brought under theories including "injury to business reputation," that "Defendants' defamation spilled over into a workplace with over one thousand people," that he "suffered mental anguish affecting him personally and professionally,"

14

that he claimed the maximum amount of $50,000 in unliquidated damages, that he sought exemplary damages, that "[w]hether damages are nominal or more significant will be left for a jury to decide," and that he prayed for "general and special" relief. Appellees' counsel pointed out the inconsistency between Sanchez's representations to the court and what he had actually pled, and the propriety of the discovery sought. The court then ruled on the record that Sanchez's motion to quash was denied.

For almost four months after that ruling, Sanchez refused to approve the form of a proposed order denying his motion to quash, contending that appellees "did not duly plead for such an order." Instead Sanchez filed a motion for reconsideration, relitigating his previously denied motion to quash, and a motion for sanctions against appellees' counsel.[6] Appellees filed a motion to enter the order denying the motion to quash and filed a motion for sanctions based on Sanchez's motions for reconsideration and sanctions. At the November 2012 hearing on the motion to enter, appellees' counsel stated, "So Your Honor, I've had to spend more time dealing with these other motions and all the attorney's fees in an effort to simply secure an order that you had made clear that you entered back in late July and he didn't do it until last Friday." Counsel testified about her fees and obtained a $250 sanctions award against Sanchez. The court subsequently set aside that sanctions order because appellees' motion to enter the order on the motion to quash was the only matter noticed for the November hearing.

Consistent with the court's ruling, this record reflects that Sanchez filed a motion to quash and for protective order in an attempt to resist discovery that was relevant to his claims as pled in his live petition. This record further shows that Sanchez's motion to reconsider the denial

---

[6] At the time of these filings, Sanchez's claims were still based on his First Amended Petition.

of his motion to quash presented the frivolous argument that appellees "failed to duly plead for" an order on their motion to quash and it attempted to relitigate matters on which the court had ruled almost four months earlier. Based on the entirety of this record, we conclude that the court did not abuse its discretion in deciding that Sanchez's motion to quash subpoena and for protective order and his motion to reconsider the ruling on his motion to quash "were presented for an improper purpose and had a claim or legal contention that is not warranted by existing law." We overrule this subpart of Sanchez's second issue.

### 3. Motion for sanctions against appellees' attorney

The trial court also determined that Sanchez's "Motion for Sanctions Against Defendants' Attorney Dietz," was "presented for an improper purpose and had a claim or other legal contention that is not warranted by existing law because there were no grounds for sanctioning [appellees'] counsel," and that this pleading caused "delay, inconvenience, harassment, and out of pocket expenses, including attorney's fees for Defendants" and wasted the court's limited resources. The "Motion for Sanctions Against Defendants' Attorney Dietz" referenced in the court's order was filed on August 13, 2012. However, Sanchez's brief argues only about "Plaintiff's Motion for Rule 13 Sanctions Against Attorney Dietz," which he filed on March 19, 2013. That March 19 motion was no part of the court's order imposing sanctions against him. Any argument Sanchez had about the propriety of sanctions based on his earlier August 13 motion is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain clear and concise argument for contentions made with appropriate citations to record).

**Sanctions award was not excessive**

In his third issue, Sanchez contends that the sanctions award is excessive in two ways: (1) because the trial court's order does not indicate that it considered lesser sanctions first; and (2) because appellees contributed to their own costs by not having a sanctions motion heard sooner.

Chapter 10 authorizes a trial court to award to a prevailing party on motions for sanctions "the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." Tex. Civ. Prac. & Rem. Code § 10.002(c). The statute's only restriction on the amount of the sanction is that it "must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id*. § 10.004(b); *Low*, 221 S.W.3d at 620. As we noted above, imposition of sanctions is appropriate (1) if there is a direct relationship between the improper conduct and the sanctions imposed—i.e., the sanctions must be directed against the abuse and abuser and be tailored to remedy any prejudice the abuse caused—and (2) if the sanctions are not excessive—i.e., the punishment should fit the crime. *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. Here, Sanchez does not assert the lack of a direct relationship between the improper conduct the trial court found and the sanctions imposed against him.[7] *See id*.

---

[7] Sanchez makes no challenge to defense counsel's billing other than his general failure-to-mitigate type of complaint in this third issue. We have reviewed the record, including evidence presented at the sanctions hearing indicating that appellees incurred over $20,000 of attorney's fees and $570.48 of expenses in defending against Sanchez's claims. Appellees sought only $20,570.48 as sanctions, consisting of their expenses and less than the value of their attorney's total time. The trial court specified in its sanctions order that this amount was "sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." We conclude, on this record and given the circumstances surrounding these proceedings, that a direct nexus exists between Sanchez's

17

We note that Sanchez failed to complain to the trial court that its order omitted a reference to its consideration of lesser sanctions. Because Sanchez did not do so, we conclude that he failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a); *Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.) (concluding that appellant waived his complaint that trial court did not consider less stringent sanctions by failing to object on that basis below); *see also Bell v. Doreman*, No. 94-50358, 1994 U.S. App. LEXIS 42994, at *4 (5th Cir. Tex. Aug. 15, 1994) (stating court need not address issues that were not considered by district court and noting "Bell's argument, that the district court failed to consider lesser sanction, was not presented to the district court."); *The Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, No. 05-14-00889-CV, 2015 Tex. App. LEXIS 4724, at *5-6 (Tex. App.—Dallas May 8, 2015, pet. denied) (mem. op.) (collecting cases on waiver of appellate complaints about sanctions and noting that party's failure to raise timely and specific objections to sanctions, including objection that trial court did not consider "less stringent sanctions," waives issue on appeal).

Further, Sanchez's contention that appellees are to blame for their own costs because they did not have a sanctions hearing on the frivolousness of his petitions in 2011 or 2012 incorrectly assumes that those petitions were his only sanctionable pleadings. The trial court's order plainly identifies other sanctionable pleadings—including Sanchez's second "no evidence" motion for summary judgment (on his own claims), his motion to quash and for protective order, his motion for reconsideration of the denied motion to quash, and his motion for sanctions against

---

improper conduct and the sanction imposed and that the amount of the sanctions award did not constitute an abuse of the trial court's discretion. *See Low v. Henry*, 221 S.W.3d 609, 614, 621 (Tex. 2007); *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

appellees' attorney—that appellees could not have known were frivolous until he filed them in late 2012 and 2013. And unlike the case that Sanchez cites as support for this issue—in which all parties litigated a frivolous suit for almost five years before seeking summary judgment and over $1,000,000 in sanctions—this record reflects that appellees sought sanctions less then two years after their attorney first appeared in the case and that Sanchez, not the appellees, was responsible for sustaining this litigation for a prolonged period. *Cf. Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 372 (Tex. 2014). For example, appellees' counsel pointed out to Sanchez's attorney—who acknowledged that he "was a stranger to the history of this case"[8]—that in addition to responding to the numerous frivolous motions that Sanchez filed, "Mr. Sanchez was in the habit of drafting pleadings, sending them to [appellees'] counsel, [appellees'] counsel was responding to the pleadings, and Mr. Sanchez was not actually filing those pleadings with the court." Every reference to "delay" in the court's sanctions order is attributed to a pleading signed by Sanchez, not to any alleged lack of diligence on the part of appellees.

Finally, we note that the court expressed a general reluctance to expedite the case to the possible detriment of Sanchez who, until after the sanctions order was signed, had been acting pro se: "You try to give a little bit of rope." The court proceeded with the case in a way that would ensure Sanchez had his "day in court," "giving him opportunity after opportunity," perhaps even delaying the sanctions hearing ("I may have put off the hearing on a frivolous suit"), and admonishing Sanchez, "Find something in this. Get an attorney. Find something." The court expected that its indulgence of Sanchez's lawsuit in this manner might have disappointed appellees:

---

[8] For most of the case Sanchez acted pro se, but he obtained an attorney who drafted and argued his motion to modify the sanctions order and represents him on appeal.

"I'm sure [appellees' attorney] went home many a time and threw her notebook down and said: 'What do I have to do?' And I give him rope, give him rope, give him rope."

This record does not support Sanchez's contention that the sanctions awarded were excessive because appellees did not have their sanctions motion heard sooner. Further, the record does not reflect that the trial court acted without reference to any guiding rules and principles in determining that sanctions were warranted under chapter 10, and the court's sanctions ruling against Sanchez was neither arbitrary nor unreasonable. On this record, we cannot conclude that the court abused its discretion by its imposition of sanctions. We overrule Sanchez's third issue.[9]

## CONCLUSION

We affirm the trial court's order.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed: August 11, 2016

---

[9] We need not address Sanchez's remaining argument concerning allocation of sanctions because it is expressly conditioned on our determination that some portion of the sanctions order is improper. We have not done so.