**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00299-CV

———————————

**WWW.URBAN.INC., Appellant**

**V.**

**CHRIS DRUMMOND, Appellee**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2012-33836

## O P I N I O N

WWW.URBAN.INC. (Urban) appeals a final judgment entered after a jury trial in a suit it initiated against Chris Drummond in which no party received any award of damages, but in which Drummond was awarded attorney's fees. In five issues, Urban contends that: (1) the trial court erroneously awarded attorney's fees to Drummond and denied Urban's motion to disregard the jury's finding on

attorney's fees to Drummond, (2) alternatively, if Drummond was entitled to recover attorney's fees, a remittitur is appropriate, because the amount of attorney's fees awarded is excessive and the evidence was factually and legally insufficient to support it, (3) the trial court erred by refusing to award Urban its attorney's fees in the amount found by the jury, (4) the trial court erred by denying Urban's amended motion for sanctions which sought mandatory statutory attorney's fees under the Texas Deceptive Trade Practices Act (DTPA) and Texas Debt Collection Act (TDCA) and attorney's fees as sanctions pursuant to Texas Rules of Civil Procedure 13 and 215 and Chapters 9 and 10 of the Texas Civil Practice and Remedies Code, and (5) the trial court erred in refusing to award Urban its appellate attorney's fees as a matter of law. We affirm in part and reverse in part.

**Background**

Chris Drummond signed a Residential Buyer/Tenant Representation Agreement (the Agreement) in 2011 in which Drummond agreed to "work exclusively through [Urban] in acquiring property" in the Houston market area for a six-month period. Under the terms of the Agreement, Urban was entitled to a commission based on the gross sales price of the property Drummond agreed to purchase in the market area, and the commission became payable when the transaction closed or when Drummond breached the Agreement, whichever occurred first. The Agreement further stated that in the event Drummond defaulted on the

2

Agreement, Drummond "will be liable for the amount of compensation that [Urban] would have received under this agreement if [Urban] was not in default." The Agreement also contained the following attorney's fees provision:

> ATTORNEY'S FEES: If Client or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

Drummond purchased a home in Houston through another realtor during Urban's six-month exclusive period. Urban filed a breach of contract claim against Drummond to collect the commission and attorney's fees as provided for in the Agreement. Drummond answered and asserted numerous affirmative defenses to Urban's breach of contract claim, including breach of fiduciary duty, and ten counterclaims against Urban, including a "counterclaim" for breach of the Agreement and a counterclaim for breach of fiduciary duty based exclusively upon Urban's conduct prior to execution of the Agreement. Drummond also filed third-party claims against Urban's counsel (Chris Di Ferrante), Urban's President and CEO (Vinod Ramani), and an Urban employee (George Silaski). Urban later added claims for fraud, and statutory attorney's fees under section 17.50(c) of the DTPA and section 15.21 of the Texas Free Enterprise and Antitrust Act (TFEA).

Drummond nonsuited his third-party actions without prejudice and Urban dismissed its fraud claim against Drummond before trial. Urban also obtained

3

summary judgment on several of Drummond's counterclaims and affirmative defenses prior to trial, and the trial court refused to submit jury questions on several others.[1] The only questions submitted to the jury pertained to Urban's breach of contract claim and Drummond's affirmative defense of breach of fiduciary duty.[2] The jury was asked: (1) whether Urban or Drummond failed to comply with the Agreement, (2) if both Urban and Drummond failed to comply, who failed to materially comply first, (3) if Urban failed to materially comply first, was Urban's failure to comply excused, and (4) what amount of damages, if any, Urban was entitled to as a result of Drummond's failure to materially comply with the Agreement. The jury was also asked to decide whether Urban had breached its fiduciary duty to Drummond after Drummond executed the Agreement, and to determine a reasonable amount of attorney's fees for both parties through trial and

---

[1]  Although they were set forth in his live pleading at trial, several of Drummond's other counterclaims and affirmative defenses were never expressly disposed of by the court (e.g., Drummond's counterclaim for class relief).

[2]  In his live pleading Drummond alleged: (1) breach of fiduciary duty as an affirmative defense to Urban's breach of contract claim; and (2) a counterclaim against Urban for breach of fiduciary duty. Drummond's counterclaim for breach of fiduciary duty is based exclusively upon Urban's actions prior to and contemporaneous with the execution of the Agreement. The jury, however, was only asked to determine if Urban complied with its fiduciary duties to Drummond *after* Drummond executed the Agreement. Thus, the record reflects that the court's charge included a question on Drummond's affirmative defense to Urban's breach of contract claim, not a question on Drummond's breach of fiduciary duty claim, as Urban argues on appeal.

on appeal. No damages question was submitted to the jury with respect to Drummond.

The jury found that both Drummond and Urban failed to comply with the Agreement, Urban failed to materially comply first, Urban's failure to materially comply was not excused, and Urban did not comply with its fiduciary duty to Drummond. The jury found that Urban incurred zero damages. The jury also found that a reasonable amount for Urban's attorney's fees was $74,649 through trial and zero on appeal, and that a reasonable amount for Drummond's attorney's fees was $110,000 through trial and $60,000 on appeal.

The trial court rendered a final judgment based on the jury verdict that ordered that Urban take nothing on its claims against Drummond, and awarded Drummond $110,000 in attorney's fees through trial, plus an additional $60,000 in conditional appellate attorney's fees. The award of attorney's fees was premised on the trial court's conclusion that Drummond was the "prevailing party" under the Agreement and Urban was the "non-prevailing party."

Urban filed a timely motion to disregard the jury's findings and a motion for new trial. Urban also filed a post-trial amended motion for sanctions which sought mandatory statutory attorney's fees under the DTPA, the TFEA, the TDCA, and attorney's fees as sanctions under Texas Rules of Civil Procedure 13 and 215 and

Texas Civil Practice and Remedies Code Chapters 9 and 10. The trial court denied all three motions.

This appeal followed.

## Breach of Contract "Counterclaim" and Prior Material Breach

Urban raises arguments in its first appellate issue that are premised in part upon the following two assertions: (1) Drummond pleaded a "counterclaim" against Urban for breach of contract, and (2) the trial court granted summary judgment in Urban's favor on Drummond's affirmative defense of prior material breach.

### A.  Drummond's Breach of Contract "Counterclaim"

Urban contends that Drummond pleaded a "counterclaim" against Urban for breach of contract. Drummond responds that he only asserted an affirmative defense to Urban's breach of contract claim, not a separate counterclaim.

The record reflects that Drummond pleaded what he denoted as a "counterclaim" for breach of contract in his live pleading, as well as an affirmative defense to Urban's breach of contract claim, both of which were premised on the same reasoning, i.e., that Urban breached the Agreement by failing to use best efforts in representing Drummond after the Agreement was executed. Because Urban did not challenge Drummond's pleading by special exceptions, we must liberally construe the pleading in Drummond's favor. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *cf. CKB & Assocs., Inc. v. Moore*

6

*McCormack Petroleum, Inc.*, 809 S.W.2d 577, 586 (Tex. App.—Dallas 1991, writ denied) ("A pleading that gives adequate notice will not fail merely because the draftsman named it improperly.").

Drummond's purported "counterclaim" did not ask for damages as a result of the alleged breach, and, instead, argued that Urban's prior breach excused him from paying any commission under the Agreement. *See generally Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied) (excuse based upon prior material breach is affirmative defense). We liberally construe Drummond's purported "counterclaim" for breach of contract as an affirmative defense to Urban's breach of contract claim.

## B.    Prior Material Breach

Urban also contends that the trial court granted summary judgment in its favor on Drummond's affirmative defense of prior material breach, thus foreclosing Drummond from arguing that affirmative defense at trial. The record reflects, however, that the parties debated the scope of the summary judgment order during a pretrial hearing and, at that hearing, the trial judge clarified her earlier summary judgment ruling and stated that "prior breach by Urban is still a viable affirmative defense" for Drummond. Thus, Drummond's affirmative defense that he was excused from performance under the contract based on Urban's prior material breach had not been disposed of by the court by the time of trial.

Having resolved these preliminary matters, we will now address Urban's appellate complaints.

## Award of Attorney's Fees Pursuant to Agreement

In its first issue, Urban contends that the trial court erred by awarding attorney's fees to Drummond because Drummond is not a "prevailing party" under the Agreement.[3] Drummond requested an award of attorney's fees based exclusively upon the Agreement's attorney's fee provision. *See Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (citing *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*,

---

[3] Whether a party is entitled to seek an award of attorney's fees pursuant to a statute or contract is a question of law that we review de novo. *See Peterson Grp., Inc.* v. *PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 59 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (statute); *Goldman v. Olmstead*, 414 S.W.3d 346, 365–66 (Tex. App.—Dallas 2013, pet. denied) (prevailing party provision in contract). A trial court's decision to award attorney's fees, however, is generally reviewed for an abuse of discretion. The First and Fourteenth Courts of Appeals, however, have recently addressed whether a trial court's decision to award attorney's fees to a "prevailing party" under a contractual attorney's fee provision should be reviewed under a de novo or abuse of discretion standard. *See N. Star Water Logic, LLC v. Ecolotron, Inc.*, No. 14-14-00972-CV, 2016 WL 402072, at *1 (Tex. App.—Houston [14th Dist.] Feb. 2, 2016, no pet.); *see also Referente v. City View Courtyard, L.P.*, No. 01–14–00602–CV, 2015 WL 6081428, at *2–3 (Tex. App.—Houston [1st Dist.] Oct. 13, 2015, no pet.). In those cases, the courts held that a trial court's decision to grant or deny attorney's fees under a contract's "prevailing party" clause *when the plaintiff has nonsuited its claims without prejudice* is a mixed question of law and fact. *N. Star Water Logic*, 2016 WL 402072, at *1; *Referente*, 2015 WL 6081428, at *2–3. In such cases, a trial court's decision that a party nonsuited to avoid an unfavorable ruling is reviewed for an abuse of discretion, deferring to any factual findings supported by some evidence, and legal questions involved in that decision are reviewed de novo. *Referente*, 2015 WL 6081428, at *2–3. Although Urban argues that de novo review is the appropriate standard in this case, we need not decide this issue because regardless of which standard of review we employ, our holding would be the same.

295 S.W.3d 650, 653 (Tex. 2009) (stating that Texas litigants can only recover attorney's fees if statute or contract specifically provides for such recovery)). The Agreement states in relevant part that if Drummond "is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to this agreement, [Drummond] will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees."

## A. Applicable Law

### 1. Contract Interpretation

When construing a contract, our primary concern is to ascertain the intentions of the parties as expressed in the document. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014). We begin our analysis with the language of the contract because it is the best representation of what the parties mutually intended. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Unless the contract dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *See id.*; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

## 2. Prevailing Parties

When interpreting a contractual attorney's fee provision in which the "prevailing party" term is left undefined, as is the case here, we are to "presume the parties intended the terms ordinary meaning." *KB Home*, 295 S.W.3d at 653.

A prevailing party is the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *Johns v. Ram-Forwarding, Inc.*, 29 S.W.3d 635, 637–38 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied)). Determination of whether a party is the prevailing or successful party is based upon success on the merits, and not on whether damages were awarded. *Glick*, 991 S.W.2d at 17; *see also Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.). In other words, the prevailing party is the party who is vindicated by the trial court's judgment. *Glick*, 991 S.W.2d at 17.

In its 2009 opinion in *KB Home*, the Texas Supreme Court explained that "[t]o qualify as a prevailing party, a . . . plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." 295 S.W.3d at 654. In short, "[w]hether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or

equitable." *Id.* at 655. Although the opinion is instructive with regard to when a *plaintiff* can be a prevailing party, *KB Home* did not reach the issue of "whether the defendant in that case could instead be the 'prevailing party.'" *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01–07–00370–CV, 2010 WL 2025749, at *18 (Tex. App.— Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.); *see also Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 629–30 (Tex. App.—San Antonio 2011, no pet.) (relying on *Silver Lion* and holding *KB Home* was inapplicable to question of whether defendant was entitled to attorney's fees).

Two years after the *KB Home* opinion, the Texas Supreme Court revisited the question of what it means to be a "prevailing party" and clarified that a *defendant* does not have to obtain affirmative relief from a court in order to "prevail." *Epps*, 351 S.W.3d at 868–70. In *Epps*, the plaintiff nonsuited its case with prejudice. *Id.* The Court held that a defendant is a prevailing party under such circumstances because "[t]he res judicata effect of a nonsuit with prejudice works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit: the defendant can never again be sued by the plaintiff or its privies for claims arising out of the same subject matter." *Id.* at 868–69. Thus, a defendant who successfully defends against a plaintiff's claim is entitled to recover its attorney's fees pursuant to a contract's "prevailing party" clause. *See SEECO, Inc. v. K. T. Rock, LLC*, 416 S.W.3d 664, 674 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (awarding

11

defendant its attorney's fees under "prevailing party" clause); *see also Bhatia v. Woodlands N. Hous. Heart Ctr., PLLC*, 396 S.W.3d 658, 670–71 (Tex. App.—[14th Dist.] 2013, pet. denied) (same); *Johnson v. Smith*, No. 07–10–00017–CV, 2012 WL 140654, at *2 (Tex. App.—Amarillo Jan. 18, 2012, no pet.) (mem. op.) (same); *Silver Lion, Inc.*, 2010 WL 2025749, at *18 (same).

### 3. "Main Issue" Analysis

Drummond contends that he is the "prevailing party" under the Agreement because he prevailed at trial by successfully defending against the "main issue" in the case, i.e., Urban's breach of contract claim. Urban argues that *KB Home* specifically rejected "main issue" analysis in cases involving contractual attorney's fees provisions, and therefore, we should determine which party prevailed under the Agreement by looking at which party prevailed at any stage of the proceedings on the most claims, counterclaims, and affirmative defenses, as opposed to only looking at which party prevailed at trial on the main issue.

*KB Home* did not reject "main issue" analysis in all circumstances. Although the Texas Supreme Court rejected the dissent's reliance upon "main issue" analysis in that case, it did so based on a conflict between the express language of the controlling attorney's fee provision and the dissent's analysis, which concluded that the "main issue" in that breach of a contract case was a counterclaim based on a separate oral agreement. *KB Home*, 295 S.W.3d at 661. Relying upon the express

12

language of the contract's attorney's fees provision, the *KB Home* majority held that whether a party was a prevailing party under the contract was confined to disputes arising out of that written contract, and did not include disputes over oral side agreements.[4] *Id.* Therefore, we do not read *KB Home* as rejecting "main issue" analysis in all cases in which a contractual attorney's fee provision controls, but, rather, only in those cases in which such analysis is incompatible with a controlling contractual provision. *See generally Bhatia*, 396 S.W.3d at 670–71.

In the years since *KB Home* was decided, this Court and others have continued to use "main issue" analysis in cases involving contractual attorney's fees provisions. *See Silver Lion, Inc.*, 2010 WL 2025749, at *18 (relying upon pre-*KB Home* authorities and holding defendant who prevailed on "main issue" was entitled to attorney's fees pursuant to contract provision); *see also SEECO, Inc.*, 416 S.W.3d at 674 (holding defendant who prevailed on "main issue" was entitled to attorney's fees pursuant to contract provision); *Bhatia*, 396 S.W.3d at 670–71 (same); *Johnson*,

---

[4]   Specifically, the majority stated:

> The attorney's-fees provision makes clear that the prevailing party is judged by "an action to enforce the terms of *this Contract* or to *declare rights hereunder.*" The problem with the dissent's analysis is that Intercontinental's counterclaim was not rooted in the parties' written contract, but rather in an alleged separate oral agreement. Under the dissent's "main issue" test, the interpretation of "prevailing party" in "this Contract" is controlled by the fate of a claim brought under a separate oral contract.

*Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 661 (Tex. 2009) (emphasis in original).

2012 WL 140654, at *2 (same). In a case tried to a jury, the issues that are fully litigated and properly submitted to the jury provide compelling evidence of the main issues in that case. *See Bhatia*, 396 S.W.3d at 670–71 (holding that, in suit involving multiple claims and counterclaims based on breach of contract, tort, and statutory causes of action, some of which "were essentially abandoned, and others were defeated in motions practice and were not submitted to the jury or raised in th[e] appeal," main issues were those that were fully litigated, properly submitted to jury, and formed basis of "vast majority of the [trial] testimony"); *see generally Johnson*, No. 07–10–00017–CV, 2012 WL 140654, at *3 (stating that parties who "obtained favorable findings on all major jury issues" and take-nothing judgment in their favor were prevailing parties under contract).

Unlike *Bhatia*, the Court cannot review a full transcript of the trial proceedings in this case order to determine which issue or issues were the primary focus of the testimony because the parties have only presented a partial reporter's record on appeal. *See* TEX. R. APP. P. 34.6(c) (allowing for filing of partial reporter's record). Unfortunately, only a fraction of the reporter's record on file with this court includes testimony on the merits. Most of the nine-volume reporter's record consists of transcripts of bench and pretrial conferences held outside the jury's presence, a bill of exception, a hearing on post-trial motions, and exhibits. Furthermore, half of the testimony included in the partial record relates primarily to the issue of attorney's

fees, and, to a lesser degree, Urban's amended motion for sanctions. As a result, we cannot discern which issue or issues consumed the majority of the trial testimony in this case. Because Urban filed a statement of the points or issues to be presented on appeal in compliance with Rule 34.6(c), we "must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." TEX. R. APP. P. 34.6(c)(4).

## B. Analysis

The only issues in this case that were submitted to the jury after a full trial on the merits were Urban's breach of contract claim and Drummond's affirmative defenses to that claim based on Urban's alleged breach of its fiduciary duty and Urban's prior breach of the Agreement. Although there were other issues raised in this case, those claims, counterclaims, and affirmative defenses were either eliminated in pretrial motion practice or not submitted to the jury. Thus, the appellate record reflects that Urban's breach of contract claim was the main issue in this case. *See Bhatia*, 396 S.W.3d at 670–71.

The jury found that both Urban and Drummond failed to comply with the Agreement, but Urban failed to materially comply with the Agreement first, and Urban's failure to comply was not excused. The jury also found that Urban did not comply with its fiduciary duty to Drummond after Drummond signed the Agreement. The jury awarded zero damages to Urban for Drummond's breach of

15

contract and the final judgment ordered that Urban take nothing on its claims against Drummond. Urban is not challenging the jury's findings on appeal. Based on the jury's findings, Drummond's failure to comply with the Agreement was excused as a matter of law by Urban's prior material breach. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). Accordingly, we hold that Drummond prevailed at trial by successfully defending against the main issue in this case, i.e., Urban's breach of contract claim. *See Bhatia*, 396 S.W.3d at 670–71; *see also Johnson*, 2012 WL 140654, at *3 (stating that parties who "obtained favorable findings on all major jury issues" and take-nothing judgment in their favor were prevailing parties under contract). As the "prevailing party" at trial on the main issue in this case, Drummond was entitled to recover his costs and reasonable attorney's fees pursuant to the express language of the Agreement.

Urban argues that Drummond is not entitled to attorney's fees pursuant to *KB Home* because Drummond did not recover any affirmative relief on his "counterclaim" against Urban for breach of contract. *See KB Home*, 295 S.W.3d at 654–55 (stating plaintiff must obtain some affirmative relief on his claim in order to be prevailing party). However, Drummond asserted an affirmative defense, not a

16

counterclaim for breach of contract, therefore, *KB Home* does not prohibit him from being a prevailing party under the Agreement. *See Fitzgerald*, 345 S.W.3d at 629–30 (noting that *KB Home* did not reach issue of whether defendant can be prevailing party); *Silver Lion, Inc.*, 2010 WL 2025749, at *18 (same).

Urban also argues that even if Drummond is a "prevailing party," Drummond still cannot recover his attorney's fees because Urban "prevailed" on most of the claims and affirmative defenses raised in this case, and therefore, Urban cannot be considered a "non-prevailing party" under the contract. As previously discussed, regardless of whether Urban successfully defended against other issues raised in this case, particularly in motion practice, a "prevailing party" is one that succeeds on the *main* issue. *See SEECO*, 416 S.W.3d at 674; *see also Mag Instrument, Inc. v. G.T. Sales Inc.*, 294 S.W.3d 800, 808 (Tex. App.—Dallas 2009, pet. denied) ("[T]he prevailing party is typically the party who either successfully prosecutes the action or successfully defends against it, prevailing on the main issue."); *cf. Chevron Phillips Chem. Co., L.P. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 72 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (rejecting party's argument that it could not be considered "non-prevailing party" because jury found it "utterly blameless" with regard to failed transaction; stating that "[n]onetheless, the contract entitled a party to recover attorney's fees for successful defense of a claim"). The trial court rendered a take-nothing judgment in Drummond's favor with respect to

17

the main issue in this case, Urban's breach of contract claim, and Urban is not challenging that aspect of the trial court's judgment on appeal.

Urban also argues that Drummond cannot recover attorney's fees based on his defense of Urban's breach of contract claim because the jury found that Drummond breached the Agreement and there is no jury finding that Drummond's breach was excused. As previously discussed, the jury's findings—which are not being challenged on appeal—demonstrate that Drummond's failure to comply with the Agreement was excused as a matter of law by Urban's prior material breach. *See Mustang Pipeline Co.*, 134 S.W.3d at 196. Because Drummond's breach was excused as a matter of law, no jury finding on this issue was necessary. The jury's finding of breach in this context also does not prevent Drummond from recovering his costs and attorney's fees under the Agreement's prevailing party provision. *See Chevron Phillips Chem. Co.*, 346 S.W.3d at 71–72 (affirming award of contractual attorney's fees to party jury had found failed to comply with contract; party's failure to comply was excused by impracticability).

Urban also cites to several cases for the general proposition that contracting parties cannot take advantage of favorable provisions of a contract they breached. All of these cases, however, are distinguishable because none of them involve a breaching party's attempt to enforce a contractual attorney's fees provision when

that party's breach was excused.[5]

Urban's reliance upon dicta in *KB Home* and on another distinguishable case is similarly misplaced.[6] After acknowledging that "[t]he issue of whether a breaching-but-nonpaying defendant can be a 'prevailing party' under an attorney's-fees provision" was not before the court, the *KB Home* court stated in a footnote that "[w]hen defining litigation success, some might argue that while relief is required for plaintiffs to prevail, a finding of 'no breach' is required for defendants—that is, a desired finding on breach is insufficient for plaintiffs but indispensable for defendants." *KB Home*, 295 S.W.3d at 659 n.42. Urban argues that this language indicates that Drummond cannot be a "prevailing party" under the

---

[5]  *See generally Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 2013 WL 5812989 at *10 (Tex. App.—San Antonio 2013, no pet.) (holding lessor could not enforce lease's limitation of liability provision against lessee because lessor had fraudulently induced lessee to sign lease); *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 650 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding employer, who had not breached employment agreement, could enforce contract's termination for cause provision); *Arias v. Brookstone*, 265 S.W.3d 459, 469 n.3 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (reversing subcontractor's quantum meruit award; noting in footnote that breaching plaintiff may sue defendant for breach of construction contract if plaintiff substantially complied with contract); *Willis v. Donnelly*, 118 S.W.3d 10, 40 (Tex. App.—Houston [14th Dist.] 2003), *rev'd on other grounds*, 199 S.W.3d 262 (Tex. 2006) (holding that in suit between shareholders of closely held corporation, shareholder who breached contract could not enforce contract's share valuation provision).

[6]  *Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 779 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (jury found that both parties materially breached contract, but GTP breached first; court held that GTP was not entitled to damages on claim because "prior material breach was not the only possible ground for the jury to find Frankel's material breach was excused," and GTP was not challenging all possible grounds on appeal).

Agreement. *KB Home*'s dicta, however, does not express any opinion about the situation presented here—whether a defendant whose breach of the contract was excused by the plaintiff's prior material breach, can nevertheless be a "prevailing party."

Urban further contends that Drummond cannot recover attorney's fees from Urban because Drummond has no obligation to pay such fees under Drummond's contingent fee agreement with this counsel. Regardless of the terms of Drummond's fee arrangement, the Agreement at issue in this case expressly entitles a "prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to this agreement . . . to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." The only limitations imposed by the Agreement on the award of attorney's fees are that such fees must be reasonable and relate to an applicable legal proceeding. We will not rewrite the parties' agreement or add any new requirements. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) (a court "may neither rewrite the parties' contract nor add to its language"); *Nat. Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied) ("[W]e cannot change the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed.").

We overrule Urban's first issue.[7]

## Drummond's Attorney's Fees

In its second issue, Urban argues that, even if Drummond is entitled to attorney's fees, the trial court erred by awarding Drummond $110,000 in trial attorney's fees because Drummond failed to segregate his fees between recoverable and non-recoverable claims and asked for attorney's fees for time spent on claims and issues for which attorney's fees are not recoverable, such as Drummond's third-party petitions against Di Ferrante, Silaski, and Ramani and Drummond's counterclaims and defenses that either did not survive summary judgment or were not submitted to the jury.

Urban further contends that the trial court erred in denying its motion to disregard the jury's findings on this issue because the evidence is factually and legally insufficient to support the award and a remittitur is appropriate because the amount of attorney's fees awarded to Drummond is excessive.

## A.    Standard of Review and Applicable Law

The need to segregate attorney's fees is a question of law, but the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–13 (Tex. 2006).

---

[7]    In light of our disposition, we need not address Urban's third and fifth issues challenging the trial court's failure to award Urban its trial and appellate attorney's fees pursuant to the Agreement's "prevailing party" clause.

21

Generally, a party seeking attorney's fees must segregate fees between claims for which they are recoverable and claims for which they are not. *Id.* at 311. If the fee movant survives the segregation inquiry, the reviewing court can then turn its attention to the legal and factual sufficiency of the evidence underpinning the award. *See id.* at 314.

When construing a contract, our primary concern is to ascertain the intentions of the parties as expressed in the document. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014). We begin our analysis with the language of the contract because it is the best representation of what the parties mutually intended. *Gilbert Tex. Constr.*, 327 S.W.3d at 126. Unless the contract dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *See id.*; *Forbau*, 876 S.W.2d at 133.

## B. Analysis

Here, the Agreement does not expressly limit the availability of attorney's fees to a party who prevails on any particular type of claim, but rather allows the "prevailing party in any *legal proceeding* brought as a result of a dispute under this agreement or any transaction related to this agreement . . . to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." Because the term "legal proceeding" is not defined in the Agreement, we interpret

this phrase according to its ordinary and generally accepted meaning. *See Gilbert Tex. Constr.*, 327 S.W.3d at 126; *Forbau*, 876 S.W.2d at 133. Black's Law Dictionary defines "legal proceeding" as: "Any proceeding authorized by law and instituted in a court or tribunal to acquire a right or to enforce a remedy." BLACK'S LAW DICTIONARY 370 (Pocket ed. 1996). The term "legal proceeding," as used in the "prevailing party" provision of a real estate contract includes, at the very least, a "lawsuit." *Sierra Assoc. Grp., Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465, at *8–9 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) ("Sierra filed a lawsuit, which is, of course, a legal proceeding.").

Urban initially sued Drummond for breach of contract in order to collect an unpaid commission under the Agreement. This suit is undoubtedly a "legal proceeding brought as a result of a dispute under" the Agreement. Drummond's counterclaims against Urban and Urban's subsequently added fraud claim against Drummond are also part of the same "legal proceeding," as that term is used in the Agreement.

Drummond argues that his third-party petitions against Di Ferrante, Silaski, and Ramani are also part of the same "legal proceeding" with Urban, and therefore, he is entitled to recover any costs and attorney's fees incurred with respect to these claims. Although Drummond's actions against Di Ferrante, Silaski, and Ramani were included in the same trial court cause number as the action between Drummond

and Urban, the contract only authorizes an award of fees against "the non-prevailing party," and Urban is not the non-prevailing party with respect to Drummond's third-party petitions against Di Ferrante, Silaski, and Ramani. As a result, Drummond cannot recover attorney's fees and costs against Urban as a "prevailing party" with respect to such claims. *Cf. Garrison v. Kocurek*, No. 03-99-00270-CV, 2000 WL 45643, at *2 (Tex. App.—Austin Jan. 21, 2000, no pet.) (mem. op., not designated for publication) (stating that main action should be viewed separately when evaluating who is "prevailing party" in third-party action). Therefore, Drummond was required to segregate his fees with respect to the time his attorney spent on his third-party petitions against Di Ferrante, Silaski, and Ramani. *See Tony Gullo*, 212 S.W.3d at 311.

Accordingly, we sustain Urban's second issue and we remand the case for further proceedings consistent with this opinion on the issue of Drummond's attorney's fees.

### Statutory Attorney's Fees and Attorney's Fees as Sanctions

In its fourth issue, Urban argues that the trial court erred by denying Urban's amended motion for sanctions which sought mandatory statutory attorney's fees under the DTPA and TDCA, and attorney's fees as sanctions under Texas Rules of Civil Procedure 13 and 215 and Texas Civil Practice and Remedies Code Chapters 9 and 10.

**A.** **Urban's Claims for Attorney's Fees pursuant to DTPA and TDCA**

**1.** **Standard of Review**

The availability of attorney's fees under the DTPA or TDCA is a question of law that we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *see also Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) ("Matters of statutory construction are questions of law for the court to decide."). However, if attorney's fees are available pursuant to a given statute, we review a trial court's refusal to award such fees for an abuse of discretion. *See Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989); *Bohls v. Oakes*, 75 S.W.3d 473, 480 (Tex. App.—San Antonio 2002, pet. denied).

**2.** **Texas Debt Collection Act**

Urban's amended motion asked the trial court to award it its attorney's fees and costs pursuant to the TDCA and DTPA. Both statutes have similar provisions authorizing the trial court to award a defendant reasonable attorney's fees and costs if the court finds that an action under that section: (1) "was brought in bad faith or for purposes of harassment," TEX. FIN. CODE ANN. § 392.403(c) (West 2006); and (2) "was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." TEX. BUS. & COM. CODE ANN. § 17.50(c) (West 2011).

Although Urban pleaded for attorney's fees pursuant to the Agreement and DTPA section 17.50(c), it did not request attorney's fees under TDCA section

392.403(c) until its post-trial amended motion for sanctions. *See Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 663 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that trial court did not err by refusing to award party attorney's fees on unpleaded ground). Accordingly, we hold that the trial court did not err in refusing to award Urban its attorney's fees under TDCA section 392.403(c) because Urban did not timely plead for such relief. *Id.*; *see also* TEX. R. CIV. P. 63 (stating party may amend its pleadings until seven days before trial unless amended pleadings operate as surprise to opposing party).

### 3. Texas Deceptive Trade Practices Act

The trial court granted summary judgment in favor of Urban on Drummond's DTPA counterclaim. Urban contends that it is entitled to attorney's fees under section 17.50(c) because Drummond's DTPA claim is groundless.[8]

The DTPA authorizes a trial court to award a defendant its reasonable and necessary attorney's fees and court costs if the court finds that "an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." TEX. BUS. & COM. CODE ANN. § 17.50(c) (West 2011). The term "groundless" as used in the DPTA has the same meaning as it does under Rule 13, i.e., "no basis in law or fact and not warranted by good faith argument for the

---

[8]    Urban does not argue on appeal that Drummond's DTPA claim was brought in bad faith or for purposes of harassment.

26

extension, modification, or reversal of existing law." *Donwerth*, 775 S.W.2d at 637; *see also Mosk v. Thomas*, 183 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In order to determine whether a DTPA claim is groundless, a trial court must examine the facts available to the litigant and circumstances existing when the litigant filed his or her pleadings. *Davila v. World Car Five Star*, 75 S.W.3d 537, 542–43 (Tex. App.—San Antonio 2002, no pet.) (applying case law interpreting Rule 13 to motion for attorney's fees under DTPA). The standard for determining whether a suit is groundless considers "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989). Groundlessness is more than an ultimate determination that the claim is not a winner. *See Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.) (Rule 13).

Questions of whether an action is groundless, brought in bad faith, or brought for the purpose of harassment are reserved solely for the court, according to the plain words of the statute. *See Donwerth*, 775 S.W.2d at 637. Appellate review of such determinations is a question of law under an abuse of discretion standard. *Id.* at 637 n.3. A trial court abuses its discretion if the trial court acts without reference to guiding rules and principles, or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

In its amended motion for sanctions, Urban argued that Drummond's DTPA claim was groundless and brought in bad faith and for purpose of harassment, and asked the court to take judicial notice of Drummond's counterclaims, Urban's motion for partial summary judgment, Urban's reply to Drummond's response to Urban's motion, and the court's order granting Urban's motion. Later in its amended motion for sanctions, Urban argued that "[m]ost of the allegations supporting Drummond's" DTPA claim "were contradicted by Drummond's own testifying expert, George Stephens in his deposition," and that "Drummond and his counsel failed to explore and verify any basis for [his] allegations [regarding the validity and enforceability of the Agreement] from those experts in Texas real estate rules, regulations, and practices." Urban did not otherwise specify in its motion why it believed that Drummond's claim was groundless, brought in bad faith, and for purpose of harassment.

Drummond responded to the amended motion, attaching an affidavit from his counsel. In that affidavit Drummond's counsel testified that he had made a reasonable inquiry into the legal and factual basis for the DTPA claim and that the claim was not brought in bad faith or for purpose of harassment. An evidentiary hearing was not held on Urban's motion for sanctions. The trial court denied Urban's motion and stated: "After reviewing the motion and response, as well as the evidence

in the record and the pleadings on file, the Court is of the opinion that the Motion should be denied."

The pleadings and motions Urban relied on in its sanctions motion do little to illuminate the facts available to Drummond's attorney and the circumstances that existed when he signed and filed the various pleadings asserting a counterclaim under the DTPA. *See Davila*, 75 S.W.3d at 542–43 (stating court must examine facts available to litigant and circumstances existing when litigant filed his pleading when determining whether DTPA claim is groundless). Drummond's counsel, however, testified that he reviewed the DTPA and "select[ed] those possible claims that could be warranted by the facts as [he] then understood them or as [he] reasonably expected them to ultimately be after discovery." Thus, there is some evidence from which the trial court could have determined that the DTPA claim was not groundless. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (stating that trial court does not abuse its discretion so long as some evidence supports its decision). Accordingly, based on the record before us, we cannot say that the trial court abused its discretion when it denied Urban's motion for attorney's fees and costs under the DTPA. *See Donwerth*, 775 S.W.2d at 637 n.3; *Bohls*, 75 S.W.3d at 480.

**B.** **Urban's Claims for Attorney's Fees as Sanctions under Rule 13 and Chapters 9 and 10**

**1.** **Chapter 9**

Urban complains on appeal about the trial court's failure to sanction Drummond pursuant to Chapter 9. Although Urban moved for sanctions pursuant to Chapter 9 in a pre-trial motion, Urban did not mention Chapter 9 in its post-trial Amended Motion for Sanctions. Unlike a supplemental motion, an amended motion supercedes the previous motion. *See Dall. Ind. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 231 (Tex. App.—Dallas 2000, pet. denied) (stating that amended summary judgment motion supercedes and supplants previous motion, which may no longer be considered). A court is not authorized to grant sanctions under a statute or rule not identified in the motion for sanctions. *See Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding trial court erred in imposing sanctions on grounds that were not pleaded). The trial court did not abuse its discretion by not awarding Urban sanctions pursuant to Chapter 9 because Urban did not request sanctions on that basis in its amended motion. *See Greene*, 174 S.W.3d at 301; *Ball v. Rao*, 48 S.W.3d 332, 338 (Tex. App.—Fort Worth 2001, pet. denied).

**2.** **Chapter 10 and Rule 13**

On appeal, Urban argues that the trial court erred in denying its request for sanctions because: (1) Drummond filed groundless claims (i.e., DTPA, TDCA, all

claims against Di Ferrante, fraud, class relief, and anti-trust violations) and defenses (i.e., illegality, public policy, and failure to be a procuring cause) in bad faith and for purpose of harassment; (2) Drummond's response to Urban's motion for summary judgment included a verifiably false statement of fact regarding the amount of attorney's fees requested by Urban; (3) Drummond's response to another of Urban's motions for summary judgment included a "misleading statement" to the court about the definition of the term "procuring cause"; (4) Drummond abused the discovery process by refusing to appear for deposition and then refusing to answer questions during his deposition; and (5) Drummond and his counsel "engaged in a pattern of conduct" that includes the aforementioned instances of misconduct, resulting in "needless expense, delay and waste of judicial resources."

### a. Standard of Review

Our analysis of a motion for sanctions filed under Chapter 10 is the same as our review of a motion filed under Rule 13. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Low*, 221 S.W.3d at 614.

For the purposes of Chapter 10 and Rule 13, courts presume pleadings, motions, and other papers are filed in good faith. *Thottumkal v. McDougal*, 251

31

S.W.3d 715, 718 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Nath*, 446 S.W.3d at 361. The party moving for sanctions bears the burden of overcoming this presumption. *Nath*, 446 S.W.3d at 361; *Low*, 221 S.W.3d at 614.

### b.  Rule 13[9]

Rule 13 authorizes the imposition of sanctions if an attorney or party signs a pleading, motion, or other paper that is (1) groundless and (2) brought in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13. For the purpose of Rule 13, "groundless" means that the claim has "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*; *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 708 (Tex. App.—Waco 2008, pet. denied). To determine if a claim is groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the document in question was filed. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006, pet. denied). We determine whether a reasonable inquiry has been made by looking at the facts available to the attorney and the circumstances that existed when the attorney signed and filed the document in question. *See Robson v. Gilbreath*, 267

---

[9]     Rule 13 authorizes sanctions as are available under Rule 215.2(b), which includes attorney's fees.

S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied); *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.).

Bad faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes; bad faith does not exist when a party merely exercises bad judgment or is negligent. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Elkins*, 103 S.W.3d at 669)). A document is filed for the purpose of harassment if it is filed with the intent to annoy, alarm, and abuse another person. *See Thielemann*, 371 S.W.3d at 294 (citing *Elkins*, 103 S.W.3d at 669). In deciding whether a party filed a document in bad faith or for the purpose of harassment, the trial court must measure the party's conduct and examine the facts available to the party at the time the relevant document was signed. *See Gomer v. Davis*, 419 S.W.3d 470, 478, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Thus, the court must consider the acts or omissions of counsel, not merely the legal merit of a pleading or motion. *See id.*; *see also Parker v. Walton*, 233 S.W.3d 535, 539 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination about the motives and credibility of the person signing the document. *Gomer*, 419 S.W.3d at 480. In some circumstances, however, the trial court may be able to make a determination by taking judicial notice of items in the case file. The trial court abuses its discretion in imposing sanctions under Rule 13 if

there is no evidence in the record for the court to determine that the party signed and filed the document in bad faith or for the purpose of harassment. *See id.*

### c. Chapter 10

Chapter 10 provides that the signature of attorneys or parties on a pleading or motion constitutes a certificate by them that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the instrument is not being presented for an improper purpose, is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and there is evidentiary support for each allegation or contention. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002). "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id.* § 10.004. As with Rule 13, in order to impose sanctions under Chapter 10, the trial court in most cases must hold an evidentiary hearing in order to make the necessary factual determinations about the party's or the attorney's motives and credibility. *See Dawson*, 258 S.W.3d at 709; *Gomer*, 419 S.W.3d at 480. The party moving for sanctions must prove the pleading party's subjective state of mind. Without an evidentiary hearing, the court may lack evidence to determine whether a pleading or motion was filed in bad faith or for the purpose of harassment. *Dawson*, 258 S.W.3d at 710; *Gomer*, 419 S.W.3d at 480.

### d. Analysis

#### i. False or Misleading Statements in Pretrial Responses to Motion for Summary Judgment

Urban moved for sanctions against Drummond based on the fact that Drummond's counsel signed: (1) the October 2012 response to Urban's partial motion for summary judgment which included a "misleading statement" about the definition of the term "procuring cause"; and (2) the October 2013 response to Urban's motion for summary judgment on Drummond's TDCA claims which falsely stated that Urban was seeking $128,571.72 in attorney's fees.

"Sanctions for alleged violations known to movants before trial are waived if a hearing and ruling are not secured pretrial." *Finlay v. Olive*, 77 S.W.3d 520, 525 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding party waived its right to sanctions pursuant to Chapter 10 and Rule 215 by failing to request and obtain hearing on sanctions motion for matters known to party prior to trial). In this case, Urban did not request sanctions based on these allegedly false and misleading statements until after trial. Moreover, Urban's amended motion reflects that its request for sanctions is based entirely upon pre-trial events that, in one case, were known to Urban well in advance of trial (i.e., Drummond's October 2012 response). As was the case in *Finlay*, "the pre-trial conduct matters at issue . . . were all complete before trial; no trial testimony was needed to determine whether improper conduct known before trial warranted sanctions." *Id.* at 526. Urban argues that its

amended motion is timely because the trial court has plenary power to grant a sanctions motion filed after a final judgment has been rendered for filing groundless pleadings pursuant to Rule 13 and Chapter 10. *See Lane Bank Equip. Co. v. Smith So. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000). However, Urban waived its right to sanctions based on Drummond's allegedly false or misleading pretrial statements by failing to obtain a hearing and ruling on said motion prior to trial. *See Finlay*, 77 S.W.3d at 526.

### ii. Drummond's "Groundless" Claims and Defenses

On appeal, Urban argues that it is entitled to sanctions against Drummond based on Drummond's filing of groundless claims and defenses in bad faith and with intent to harass. *See* TEX. R. CIV. P. 13. At the outset, we note that Urban did not request sanctions based on Drummond's claims for fraud and class relief in its amended motion for sanctions. Accordingly, we cannot say that the trial court abused its discretion when it refused to award Urban attorney's fees based on Drummond's filing of these claims. *See Ball*, 48 S.W.3d at 338 (holding trial court erred in imposing sanctions when motion did not request sanctions on that ground).

With respect to Drummond's other allegedly groundless claims and defenses, Drummond responded to the amended motion for sanctions, attaching an affidavit from his counsel in which he stated that he made what he considered to be a reasonable inquiry into the legal and factual basis of these claims when he filed the

pleading in question and responded to the various motions for summary judgment on those claims. Drummond's counsel also testified that he "unequivocally" denied filing any of these claims or defenses for the purpose of harassment or in bad faith. Thus, there is some evidence from which the trial court could have determined that these claims and defenses were not groundless. Accordingly, based on the record before us, we cannot say that the trial court abused its discretion when it denied Urban's motion for sanctions on this ground. *See Donwerth*, 775 S.W.2d at 637 n.3; *Bohls*, 75 S.W.3d at 480.

### iii. Discovery Abuses

Urban also sought sanctions against Drummond for pretrial discovery abuses relating to Drummond's alleged refusal to appear for deposition and his refusal to answer questions during his deposition. *See* TEX. R. CIV. P. 215.2(b)(2) (authorizing court to impose monetary penalty against party, or advising attorney, who fails to comply with order compelling discovery or abuses discovery process). A party's failure to obtain a pretrial ruling on discovery disputes existing before trial begins constitutes a waiver of the issue on appeal. *See Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993); *see also Finlay*, 77 S.W.3d at 525. Although Urban filed motions to compel Drummond's deposition testimony, the appellate record does not reflect that Urban ever obtained a ruling on its motions.

Accordingly, Urban has waived any claim for sanctions based on these pretrial discovery abuses. *Id.*

### iv. "Pattern of Conduct"

Urban also argues on appeal that the trial court abused its discretion when it refused to award it sanctions because Drummond and his counsel "engaged in a pattern of conduct" that resulted in "needless expense, delay and waste of judicial resources." Urban did not raise this argument in its amended motion for sanctions and Urban's "pattern of conduct" argument is not an independent ground for the imposition of sanctions. The trial court did not abuse its discretion by not sanctioning Drummond and awarding Urban attorney's fees on this basis.

### C. Urban's Claim for Mandatory Attorney's Fees with Respect to Drummond's Third-Party Petitions

In addition to seeking recovery of the attorney's fees Urban incurred defending *itself* against Drummond's counterclaims, Urban is also seeking attorney's fees from Drummond based on Drummond's filing of *third-party petitions* against Urban's counsel (Di Ferrante), Urban's president and CEO (Ramani), and an Urban employee (Silaski). Urban contends that Drummond's third-party DTPA and TDCA claims are groundless and have no basis in law or fact and seeks to recover the attorney's fees Urban incurred defending Di Ferrante, Silaski, and Ramani against these claims.

Drummond nonsuited all of his claims against Di Ferrante, Silaski, and Ramani without prejudice in October 2012. Urban and Drummond tried the remaining claims to a jury in November 2013. The record reflects that Urban did not attempt to recover attorney's fees it incurred defending Di Ferrante, Silaski, and Ramani against Drummond's DTPA and TDCA claims pursuant to Chapter 10 and Rule 13 until Urban's post-trial amended motion for sanctions, which was filed in December 2013—14 months after the nonsuit.

As previously discussed, "[s]anctions for alleged violations known to movants before trial are waived if a hearing and ruling are not secured pretrial." *Finlay*, 77 S.W.3d at 525; *see generally Remington Arms*, 850 S.W.2d at 170 (holding that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct"). Urban did not request sanctions for these pretrial matters until after trial. As was the case in *Finlay*, "the pre-trial conduct matters at issue . . . were all complete before trial; no trial testimony was needed to determine whether improper conduct known before trial warranted sanctions." *Finlay*, 77 S.W.3d at 526.

Urban waived its right to sanctions based on Drummond's filing of the third-party complaints by failing to move for sanctions and request and obtain hearing on its sanctions motion for matters known to the party prior to trial. *See id.*

**D. Conclusion**

Having determined that Urban waived its right to sanctions or that the trial court did not abuse its discretion by denying Urban's amended motion for sanctions, we overrule Urban's fourth issue.

## Conclusion

We reverse the portion of the trial court's judgment awarding Drummond his attorney's fees and we remand the case for further proceedings consistent with this opinion on this issue. We affirm the trial court's denial of Urban's amended motion for sanctions and affirm the judgment in all other respects.


Russell Lloyd
Justice


Panel consists of Justices Keyes, Massengale, and Lloyd.